**MARY S. KRECH TRUST and Mark Marks, Plaintiffs,**

**Mary S. Krech Trust, Plaintiff-Appellant,**

v.

**The LAKES APARTMENTS et al., Defendants-Appellees.**

No. 79–2869.

United States Court of Appeals, Fifth Circuit.
Unit B

April 6, 1981.
Rehearing and Rehearing En Banc Denied May 4, 1981.

Daniel S. Dearing, Tallahassee, Fla., for plaintiff-appellant.

Fowler, White, Burnett, Hurley, Banick & Strickroot, Curtis Carlson and Richard S. Banick, Miami, Fla., Gordon Eugene Boyce, Raleigh, N. C., Kelly, Black, Black & Kenny, Hugo L. Black, Jr., Kenny, Narchwalter & Seymour, Michael Nachwalter, Miami, Fla., for defendants-appellees.

Before HILL, FAY and HATCHETT, Circuit Judges.

FAY, Circuit Judge:

The first question we are asked to decide in this appeal is whether one can successfully plan and execute a private offering of a security by following the guidelines prepared by the Securities and Exchange Commission and our recent decision in *Swenson v. Engelstad*, 626 F.2d 421, (5th Cir., 1980). Answering that question in the affirmative, we move to the second inquiry, whether or not the evidence in the record of this case supports the jury's conclusion that such a plan was completed as designed. Again we answer in the affirmative.[1] Recognizing

---

1. We have departed somewhat from appellants' statement of the issues. We think our state- ment fairly delineates the issues but reproduce appellant's statement as follows:

the rigid requirements surrounding private offerings,[2] we hold that here ample justification exists for reasonable persons to conclude that such tests were met, and we affirm the entry of final judgment upon jury verdict.

In 1974, the original owners of The Lakes Apartments, Ltd., caught in an interest squeeze and out of construction money, contacted Envicon Development Corporation (Envicon Development), a real estate company, to determine whether syndication was possible. After an investigation, Envicon Development decided to syndicate and approached Wachovia Bank for funds. Wachovia agreed to advance construction money but required a guarantee from Erving Wolf, majority shareholder of Envicon Development.[3]

Prior to offering any units in the Lakes limited partnership, Envicon Equities Corporation (Envicon), a subsidiary of Envicon Development, was formed to put together the syndication. Envicon undertook a formidable research project called a "due diligence" investigation which would generate the kind of information that would ordinarily go into a registration statement. The syndicators envisioned an offering of twenty limited partnership units and intended to

structure their offering to meet the requirements of Rule 146.[4] Ultimately, fifteen persons were offered units. Among the thirteen purchasers of units was appellant Mary S. Krech Trust (the Trust).

During this same time period, the Trust, acting through its trustees Chapin Krech and Dr. Shepard Krech, found itself in the enviable position of owning a surplus of shares of Exxon stock. Although the market price per share of the stock was high, the yield was relatively low, and the trustees had determined to sell. Realizing that the tax consequences of a sale of part of the stock would be great, the trustees began looking for a tax shelter investment. Chapin Krech, himself a former partner in a New York Stock Exchange brokerage firm, contacted his broker, David Williams. This contact began the chain linking the defendants-appellees to the Trust.

Williams was employed by defendant Bache Halsey Stuart Shields, Inc. Williams' boss at Bache contacted defendant Steven Blank, head of Bache's tax shelter department in New York City. Blank brought Krech and Williams into contact with defendant Donald Gary, vice president of Envicon Development. Gary was in charge of the syndication of the Lakes.[5]

STATEMENT OF ISSUES
PRESENTED FOR REVIEW

I. Did the defendants violate Section 12(1) or Section 12(2) of the Securities Act of 1933?

1. Threshold issues—was the jury verdict offset by motion for directed verdict; and were interstate sale or offer reflected clearly in the record?

2. In not describing parameters of their offering, did the sellers fail to prove an exemption pursuant to Section 4(2) of the Securities Act of 1933?

3. In light of circumstances under which statements as to income were made, were omissions from offering documents of material fact regarding electric power costs and the nature of "occupancy" violative of Section 12(2) as well as determinative of the disclosure requirement of Section 12(1)?

II. Should the district court have allowed amendment of the requested admission, amendment of the pretrial stipulation, and granted plaintiff summary judgment as to severed Counts II and III under Florida law?

**2.** *See* Securities Act of 1933, 15 U.S.C. § 77d(2) (1976); Rule 146, 17 C.F.R. 230.146 (1975).

**3.** Wolf had a net worth of over ten million dollars. His guarantee took the form of an agreement personally to buy any unit of the limited partnership remaining unsold as of December 23, 1974. Appellant argued in its brief on appeal that Wolf was an offeree of the securities and as such had no access to the kind of information which would be in a registration statement. We do not accept this view of his position in the transaction. Apparently the jury did not accept counsel's argument that Wolf did not have access to the information. The record indicates that he signed a subscription agreement rather than an offeree questionaire.

**4.** 17 C.F.R. 230.146 (1975).

**5.** Other named defendants were: Envilake Corporation, general and limited partner in the Lakes; John W. Galston, shareholder in Envicon Development; Richard E. Byrd, Jr., accountant and original partner in the Lakes;

■ Although it had purchased the investment primarily as a tax shelter, apparently the Trust anticipated income from positive cash flow by the end of the second quarter of 1975. When no income was realized, Chapin Krech initiated an investigation which led to the present lawsuit. The Trust sought relief under eight counts. Counts I, IV, V and VI alleged violations of the Securities Act of 1933, §§ 5, 12(1), 12(2), 17(a) (15 U.S.C. §§ 77*l*(1), 77*l*(2), 77q(a)). Count V alleged violation of § 10(b) (15 U.S.C. § 78j(b)), Securities Exchange Act of 1934 and Rule 10(b)(5) (17 C.F.R. 240.10b–5). Counts II, III, VII alleged violations of Florida Statutes §§ 517.07, 517.21 and 517.-301. Count VIII alleged fraud and deceit under Florida common law. Counts II and III were severed before trial,[6] and Counts V and VIII were voluntarily dismissed. Following jury trial, judgment was entered for the defendant-appellees. The jury, using special verdict forms, found that the offering was exempt from registration requirements, that there were no material misrepresentations or omissions making the sale misleading, and that there was no fraud or deceit upon the Trust in connection with the "break-even" statement.

■ In *Swenson v. Engelstad*, 626 F.2d 421 at 425 (5th Cir. 1980) we reviewed four factors found useful in determining whether an offering can be exempt from registration under section 4(2) of the Securities Act of 1933 (15 U.S.C. § 77d(2) (1976)). The factors are: 1) the number of offerees and their relationship to the issuer; 2) the number of units offered; 3) the size of the offering; and 4) the manner of the offering. *See also SEC v. Continental Tobacco Co. of South Carolina*, 463 F.2d 137, 158 (5th Cir. 1972). These factors are not litmus paper tests but guidelines to use in effectuating the rule in *Hill York Corporation v. American International Franchises, Inc.*, 448 F.2d 680, 687 (5th Cir. 1971) that whether an offering is public or private is a question of fact which must be resolved in the light of the particular circumstances. "The design of the statute is to protect investors by promoting full disclosure of information thought necessary to informed investment decisions." *S. E. C. v. Ralston Purina Co.*, 346 U.S. 119, 124, 73 S.Ct. 981, 984, 97 L.Ed. 1494, 1498 (1953). The bottom line issue in allowing the private offering defense is "whether the particular class of persons affected needs the protection of the Act." *Id.* at 125, 73 S.Ct. at 984, 97 L.Ed. at 1498.

■ Under Rule 146, in order to be considered a private offering, the offering must: 1) not be made by any means or form of general solicitation or advertising; 2) be made only to those persons whom the issuer has reasonable grounds to believe are of knowledge and experience which would enable them to evaluate the merits of the issue or who are financially able to bear the risk; 3) be made only to those persons who have access to the same kind of information as would be contained in a registration statement. Under this rule, the issuer must have reasonable grounds to believe, and must believe, that there are no more than thirty-five purchasers from the issuer.[7]

---

Samuel R. Byrd, manager of the Lakes; William A. Wilson, owner of the tract of land upon which the Lakes is situated and a general partner in the Lakes; and Daniel C. Austin, builder of the Lakes.

**6.** On appeal, appellant challenges the trial court's denial of permission to amend a prior stipulation to the effect that sales of units in the Lakes were made without payment of commissions, except for persons registered under § 517.12 Florida Statutes. (R. 894). The request was made after opening statement and was based on the fact that there had been a change of counsel for plaintiffs. However "new counsel" had been handling the case almost a year before the request was made. Under these circumstances, the denial was not a clear abuse of discretion as is required under Fed.R.Civ.P. 16 where defendants would be prejudiced by having completed discovery. *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971).

**7.** 17 C.F.R. § 230.146 reads in part:

(c) *Limitation of Manner of Offering.* Neither the issuer nor any person acting on its behalf shall offer, offer to sell, offer for sale, or sell the securities by means of any form of general solicitation or general advertising, including but not limited to, the following:

Transfer of shares is limited in order to prevent and exempt private offering from becoming a mere conduit for a public offering without a registration statement. The Preliminary Notes to the Rule make it clear that the purpose is to provide objective standards upon which businessmen may rely in raising capital under the 4(2) exemption, 15 U.S.C. § 77d(2), but failure to satisfy all conditions of the Rule does not raise the presumption that the offering cannot be exempt.

■ In the instant case, the appellees designed a multi-step procedure for making the offering. A select list of Bache brokers, experienced in tax shelters and specializing in counseling a clientele of wealthy and knowledgeable investors, was compiled by nominations from Bache branch managers. This select group was given a Project Fact Sheet containing information for their own use in determining which clients would be suitable. If a broker had a client he thought was interested, he could obtain from Envicon the Private Placement Memorandum and Project Analysis—Financial Analysis. Before he could receive these materials, however, the broker was questioned with regard to his client's suitability for the placement. The potential investor reviewed the documents, was given an opportunity to ask questions, and was then

(1) Any advertisement, article, notice or other communication published in any newspaper, magazine or similar medium or broadcast over television or radio;

(2) Any seminar or meeting, except that if paragraph (d)(1) of this section is satisfied as to each person invited to or attending such seminar or meeting, and, as to persons qualifying only under paragraph (d)(1)(ii) of this section, such persons are accompanied by their offeree representative(s), then such seminar or meeting shall be deemed not to be a form of general solicitation or general advertising; and

(3) Any letter, circular, notice or other written communication, except that if paragraph (d)(1) of this section is satisfied as to each person to whom the communication is directed, such communication shall be deemed not to be a form of general solicitation or general advertising.

(d) *Nature of offerees.* The issuer and any person acting on its behalf who offer, offer to sell, offer for sale or sell the securities shall have reasonable grounds to believe and shall believe:

(1) Immediately prior to making any offer, either:

(i) That the offeree has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment, or

(ii) That the offeree is a person who is able to bear the economic risk of the investment; and

(2) Immediately prior to making any sale, after making reasonable inquiry, either:

(i) That the offeree has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment, or

(ii) That the offeree and his offeree representative(s) together have such knowledge and experience in financial and business matters that they are capable of evaluating the merits and risks of the prospective investment and that the offeree is able to bear the economic risk of the investment.

(e) *Access to or furnishing of information.* Note: Access can only exist by reason of the offeree's position with respect to the issuer. Position means an employment or family relationship or economic bargaining power that enables the offeree to obtain information from the issuer in order to evaluate the merits and risks of the prospective investment.

(1) Either:

(i) Each offeree shall have access during the course of the transaction and prior to the sale to the same kind of information that is specified in Schedule A of the Act, to the extent that the issuer possesses such information or can acquire it without unreasonable effort or expense; or

(ii) Each offeree or his offeree representative(s), or both, shall have been furnished during the course of the transaction and prior to sale, by the issuer or any person acting on its behalf, the same kind of information that is specified in Schedule A of the Act, to the extent that the issuer possesses such information or can acquire it without unreasonable effort or expense. This condition shall be deemed to be satisfied as to an offeree if the offeree or his offeree representative is furnished with information, either in the form of documents actually filed with the Commission or otherwise, as follows:

\* \* \* \* \* \*

(g) *Number of purchasers.* (1) The issuer shall have reasonable grounds to believe, and after making reasonable inquiry, shall believe, that there are no more than thirty-five purchasers of the securities of the issuer from the issuer in any offering pursuant to the Rule.

asked to fill out the offeree's questionaire requiring him to set forth his net worth and financial sophistication. These offeree questionaires were reviewed by Mr. Gary, and only those persons to whom he was willing to sell were given offers. He testified that his determination was based on whether they met the qualifications of Rule 146(d).

The details of this plan were offered through the testimony of Gary and Blank. Offeree questionaires, Project Fact Sheets, list of brokers and other documents demonstrating the general control exercised by appellees were offered into evidence at trial. The list of the fifteen offerees was received in evidence. The jury was instructed:

> The ultimate test is whether the persons to whom the offering is made are in such position with respect to the issuer that they either actually have such information as a registration itself would have disclosed, or they have access to such information.
>
> Stated otherwise, the ultimate test is did the offerees know or have a realistic opportunity to learn facts essential to an investment judgment.
>
> Now on that question, if a preponderance of the evidence establishes that the offering in this matter was exempt, then your answer to that question would be yes. If there is no such preponderance of the evidence, your answer would be no.[8]

R. VII, 27, 28.

It is clear from the record that there was sufficient evidence from which the jury could conclude that the offering was exempt. As an appellate court, we are required to accept evidence in favor of the verdict as true and to give such evidence the benefit of inferences sustaining the jury's findings. *Hill York Corp. v. American International Franchises, Inc.,* 448 F.2d 680, 684 (5th Cir. 1971); *Little v. Green,* 428 F.2d 1061, 1066 (5th Cir. 1970). This case differs from *SEC v. Continental Tobacco Co. of South Carolina,* 463 F.2d 137 (1972) and from *Swenson v. Engelstad,* 626 F.2d 421 (5th Cir. 1980) in which we held that in proving the private offering defense, failure to prove the number or identity of the offerees was fatal to the defense. Here, the defendants established number and identity, in addition to financial wealth and the full information required as to all offerees.

In attacking the jury's finding that there were no material misrepresentations, appellant appears to be asking this court to retry an issue of fact.[9] We are bound by the jury's findings unless appellant can show an absence of probative facts to support the jury's findings. *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916, 922 (1945); *Hill York Corp. v. American International Franchises, Inc.,* 448 F.2d 680, 691 (5th Cir. 1971). Chapin Krech testified that he merely missed the discussion of the thirty-day leases, a factor in income production, and that he read and understood the risk factors. (R. XXIII, 809–25). Gary testified that Chapin Krech and his attorney met with him and the documents were discussed and questions asked. (R. XII, 116–118). Credibility questions are to be resolved by the fact finders. This jury heard and evaluated the witnesses with expert guidance from the trial judge. Although the issues can be described as fairly complex, we conclude they were fairly tried and the conclusions amply supported.

Judgment of the trial court upon jury verdict is AFFIRMED.

---

**8.** It should be noted that this case was heard by an experienced trial judge who had full knowledge of the law. The instructions to the jury completely set out the many factors to be considered in deciding whether defendants had met their burden. Appellant's argument that the judge should have emphasized certain words is meritless. Under Fed.R.Civ.P. 51, the trial judge has considerable latitude in framing his instructions as long as he explains clearly the claim supported by the evidence. *See Ebanks v. Southern Railway Co.,* 640 F.2d 675 (5th Cir. 1981); *Keyes v. Lauga,* 635 F.2d 330 (5th Cir. 1981).

**9.** *See* note 1, *supra* ' I, 3.