Seymour ROSEMAN

v.

RETAIL CREDIT CO., INC.

Civ. A. No. 76–3239.

United States District Court, E. D. Pennsylvania.

March 21, 1977.

**644**

Arthur J. Matusow, Nissenbaum & Serota, Philadelphia, Pa., for plaintiff.

Hugh J. Hutchison, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

RAYMOND J. BRODERICK, District Judge.

This is an action for damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("Act"). Plaintiff, Seymour Roseman, alleges that defendant, Retail Credit Co., Inc., violated the Act in failing to: (1) take reasonable steps to assure the accuracy of its original credit report and subsequent reinvestigation; (2) inform the plaintiff that he had the right to have a statement of his version of the dispute included as a part of his consumer report; and (3) disclose the sources of its information in preparing the reports.[1] Having heard testimony of witnesses for the plaintiff and for the defendant during a trial before the Court without a jury, the Court enters judgment for defendant.

The parties stipulated to many of the material facts. Plaintiff was employed as a debit agent for the John Hancock Insurance Company ("John Hancock") from September, 1969 until his resignation on March 19, 1975. Beginning in November, 1974, and continuing for approximately three months, John Hancock conducted a full audit of plaintiff's entire account. The audit revealed a shortage in plaintiff's account of $314.84, which he repaid. One week after the completion of the audit, plaintiff was asked to resign from John Hancock by the district manager who told him that if he did not resign he would be fired. The district manager also told him that his resignation was in "the best interest of the company". Plaintiff claims that he never was informed of the specific reasons why John Hancock wanted his resignation. The plaintiff testified, however, that the district manager asked him to sign a letter of resignation which stated that he was resigning "because of shortages". Plaintiff refused to sign this statement, but did submit a letter of resignation which did not specify a reason.

---

1. Jurisdiction is conferred on this Court by 15 U.S.C. § 1681p which provides that "An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy".

Defendant prepared a number of reports concerning the plaintiff. One of these reports, which the plaintiff claims violates his rights under the Act, was prepared by its Boston office on May 23, 1975, and reads in relevant part:

We have handled [sic] at the home office in Boston and find that Mr. Roseman was employed as a debit agent [for John Hancock]. He resigned due to discovery of discrepancies in his accounts amounting to $314.84. This was all repaid by Mr. Roseman. His production in 1970, 1971, and 1972 was above average and in 1973 and 1974 it was below average. This was the extent of the information available from the John Hancock due to strict company policy.

In May, 1975, plaintiff applied for a job as a debit agent with the Sun Life Insurance Company. Although he was initially informed that the job would be his, the job offer was withdrawn. It is plaintiff's belief that the job at Sun Life was denied him because of the contents of the above quoted report.

On June 3, 1975, plaintiff went to defendant's Horsham, Pennsylvania office where he met its manager, Paul Kent, who revealed to him the contents of all reports which it had prepared concerning him. On this first visit to the defendant's office, the plaintiff, after learning the contents of the above quoted report, advised Mr. Kent that he would try to get it changed by John Hancock. Plaintiff returned to the defendant's office on July 7, 1975, at which time he requested the defendant to reinvestigate the information contained in the above quoted report. Defendant agreed to do so and prepared a report which stated:

We have rechecked at the home office of the John Hancock in Boston at 200 Berkley Street. We have verified the previous information that Mr. Roseman was a Debit Agent [for John Hancock]. He resigned because of discrepencies [sic] in his accounts which have subsequently been fully repaid. This has been checked and rechecked and is definitely the reason for his termination. His production which

had been above average began to slip in 1973 and the situation subsequently developed.

Plaintiff went again to the Horsham office on July 21, 1975, and was shown this report.

At no time did the plaintiff request the defendant to include a statement setting forth his version of the circumstances surrounding his resignation. Furthermore, plaintiff introduced no credible evidence to show that anything in the above quoted reports was inaccurate. On the other hand, the defendant introduced the records of John Hancock, which are in evidence, which specifically provide that the plaintiff resigned because of "discrepancies in accounts". Plaintiff's position throughout the trial was that John Hancock never told him the reason for demanding his resignation nor did they discuss with him the drop in his production. The only credible evidence introduced at trial corroborates defendant's reports.

Plaintiff contends that the defendant failed to take reasonable steps to assure the accuracy of its original credit report and subsequent reinvestigation. The Act requires a consumer reporting agency to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b). The parties stipulated that the usual procedure of the defendant is to corroborate adverse information through more than one source unless the information is obtained from an official record or is information which is uniquely within the knowledge of a single source. The information contained in the instant reports concerning plaintiff's resignation from John Hancock was obtained directly from the official records of John Hancock. Plaintiff contends that this was not sufficient, and that the Act required defendant to verify adverse information with at least one other source. In support of this proposition plaintiff cited the Federal Trade Commission compliance pamphlet on the Act which states "whenever possible adverse information should be verified by more than one source." 5 CCH, *Consumer*

*Credit Guide* 59,791. The purpose of this admonition is obviously to assure that the information in the report is accurate. As we have heretofore pointed out, defendant's reports accurately stated the information contained in John Hancock's records. Plaintiff also cites *Millstone v. O'Hanlon Reports, Inc.,* 383 F.Supp. 269 (E.D.Mo. 1974), *aff'd,* 528 F.2d 829 (8th Cir. 1976) for the proposition that failure to verify adverse information in a consumer's file is in violation of the Act. The *Millstone* court, however, was presented with a situation in which the report was filled with inaccuracies, much of which was proven to be a fabrication. As we heretofore stated, there was no credible evidence presented by the plaintiff showing that the reports were inaccurate.

■ The purpose of the Act is to protect consumers from having inaccurate information circulated concerning them. 116 *Cong.Rec.* 36572 (1970). In this case the defendant's reports were accurate and therefore complied with the purpose of the Act. Since, on the basis of the record in this case, we have found that defendant's reports were accurate, the Act was not violated. *Middlebrooks v. Retail Credit Co.,* 416 F.Supp. 1013 (N.D.Ga.1976).

■ Plaintiff also contends that defendant violated the Act by failing to inform the plaintiff that the Act gives a consumer the right to have a statement of his version of the dispute included as part of the consumer report. The Act provides that a consumer may, in those situations where the completeness or accuracy of the report is disputed, prepare and file a brief statement setting forth the nature of the dispute. 15 U.S.C. § 1681i(b). While it is clearly the better practice for the consumer reporting agency to inform the consumer of his right to file such a statement, the Act does not place an affirmative duty on the reporting agency to so advise the consumer. *Middlebrooks, supra,* 416 F.Supp. at 1017–18.[2]

Plaintiff's final contention is that defendant violated the Act in failing to disclose the sources of its information used in the reports. This contention merits little discussion since we find that the reports on their face disclose that the information was obtained from John Hancock.

We therefore find that the plaintiff has failed to carry his burden of proving that the defendant in any way violated the Act. This Memorandum is in lieu of findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

Accordingly, the attached Order is entered:

## ORDER

AND NOW, this 21 day of March, 1977, it is ORDERED that judgment in the above captioned case is entered for defendant.

---

**2.** Mr. Kent, the manager of one of defendant's offices, testified that it was the defendant's policy to advise consumers of their right to file a statement of dispute, but that he could not specifically recall so advising the plaintiff.