James McPHEE et al.

v.

CHILTON CORPORATION et al.

Civ. No. H–78–417.

United States District Court,
D. Connecticut.

Dec. 8, 1978.

Leon RisCassi, Nicola E. Rubinow, Ris-Cassi & Davis, Hartford, Conn., for plaintiffs.

Kenneth S. Halpern, Patterson, Casey, Halpern, Coco & Grace, Wethersfield, Conn., Charles F. Corcoran, III, Thomas J. Shortell, Updike, Kelly & Spellacy, Hartford, Conn., for defendants.

## RULING ON MOTION TO DISMISS

NEWMAN, District Judge.

Plaintiffs, James McPhee and Rita McPhee, have filed suit against three defendants under the Fair Credit Reporting Act (Credit Act), 15 U.S.C. §§ 1681–1681t (1970). Jurisdiction of this Court is predicated on 15 U.S.C. § 1681p. One of the defendants, William Fowler (Fowler) moves to dismiss because the complaint fails to state a claim against him on which relief can be granted. Plaintiffs respond with a motion to strike the defenses set forth in Fowler's answer, the first raising the same issue as Fowler's motion to dismiss and the second claiming that the McPhees failed to follow procedures required by § 1681i of the Credit Act.

The allegations in the complaint[1] are taken as true for the purposes of these motions. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). On January 29, 1975, the McPhees filed a petition of bankruptcy in this Court. Upon application made shortly thereafter, the petition of bankruptcy was permitted to be withdrawn, and the matter was dismissed on March 27, 1975. The McPhees subsequently paid their debts and met their other financial obligations. In July, 1977, the McPhees applied to the State Bank for Savings for a mortgage and were refused, allegedly because of a credit report prepared by Fowler (and his business, Merchants' Reporting Service) for the Mortgage Guaranty Insurance Corporation. The report, dated June 20, 1977, is claimed to have contained "erroneous, inaccurate, incomplete and/or misleading statements concerning the [McPhees'] solvency," in violation of § 1681e of the Credit Act. It included the following information concerning the McPhees' solvency: "Bankruptcy: Filed Jan. 29, 1975 Liabilities $14,106. Assets $1355."

The suit against Fowler is brought under the provision of the Credit Act that makes a "consumer reporting agency" liable to "any consumer" for negligent failure to comply with "any requirement imposed" by the Credit Act. 15 U.S.C. § 1681o. There is no dispute that the McPhees are "consumers" and that Fowler is a "consumer reporting agency" under §§ 1681a(c) and (f), respectively, of the Credit Act. Nor is there a

---

1. Plaintiffs' motion to amend their complaint has been granted. References in this opinion to the "complaint" are taken from the amended complaint.

contention that suit cannot be filed under § 1681o claiming a violation of § 1681e. See *Green v. Stores Mutual Protective Association,* 74–Civ.–4607 (S.D.N.Y. Oct. 3, 1975); *Millstone v. O'Hanlon Reports,* 383 F.Supp. 269 (E.D.Mo.1974), *aff'd,* 528 F.2d 829 (8th Cir. 1976). Plaintiffs make clear in their memorandum opposing Fowler's motion that they rely primarily on § 1681e(b), which provides:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

The dispute under this section[2] concerns the meaning of the term "accuracy" and the type of procedures mandated to ensure "maximum possible accuracy" in published reports. The precise issue is whether the Act imposes a requirement of updating information that was accurate when received.

 Some duty of evaluation is imposed on reporting agencies by the Credit Act, at least by implication. The legislative history of the Act shows, for example, that § 1681e was intended to require reporting agencies to differentiate between types of individual bankruptcies[3] and to note the disposition of a wage earner plan where the consumer conscientiously carries out his responsibilities under it. [1970] U.S.Code Cong. & Admin.News, pp. 4394, 4415. More generally, some courts have held that failure to take reasonable actions to verify adverse information that is received concerning a consumer amounts to non-compliance with § 1681e. *Millstone v. O'Hanlon Reports, Inc., supra; Miller v. Credit Bureau, Inc.,* [1969–1973 Transfer Binder] Cons.Cred. Guide (CCH) ¶ 99,173 (D.C.Super.Ct.1972). But even *Miller,* which went further than any other case in holding that a reporting agency must investigate extenuating circumstances that might explain adverse information, applied that holding only to information as received by an agency. It did not require an agency to follow up on information contained in its files, once that information has been verified and evaluated as being accurate as of the date received.[4]

---

**2.** It is important to recognize that the McPhees do not allege a violation of § 1681i of the Credit Act as the basis of their § 1681o suit against Fowler. Section 1681i specifies procedures governing any dispute that a consumer carries directly to a consumer reporting agency concerning the "completeness or accuracy" of any information in his file. Subsection (a) requires the agency to reinvestigate the disputed information unless it reasonably believes that the dispute is frivolous or irrelevant. If reinvestigation shows the information to be inaccurate or no longer verifiable, the agency must delete the information. According to subsection (b), even if the reinvestigation does not resolve the dispute, the consumer may file a brief statement about the dispute. Both the existence of any dispute and the consumer's statement about it are required by subsection (c) to be included in any subsequent report prepared by the agency and containing the disputed information. Finally, subsection (d) gives the consumer the right to require the agency to send notification of any deletion or any filing by the consumer about a dispute, to any person designated by the consumer who has received a report within a specified time.

Plaintiffs do not maintain that they contacted Fowler in order to report the alleged inaccuracies and to request reinvestigation and deletion. *Compare* § 1681i of the Credit Act.

**3.** The report concerning the McPhees did not specify the type of bankruptcy proceeding in which they had been involved. It noted simply that the McPhees had "filed" for "bankruptcy" on a certain date. The McPhees make no complaint on this ground.

**4.** Similar standards have been articulated by the Staff of the Federal Trade Commission, the agency given primary responsibility for enforcing compliance with the Credit Act. *See* 15 U.S.C. § 1681s. In the understanding of the Staff, the Act requires a determination of the accuracy of information and reliability of sources at the time information is gathered. Federal Trade Commission, Division of Credit Practices, Bureau of Consumer Protection, *Compliance with the Fair Credit Reporting Act* (rev. 2d ed. 1977), at 26.

The Staff further asserts that "[t]he requirement in the law that steps be taken to promote accuracy also requires periodic reevaluation of data to determine whether it has become obsolete or misleading with the passage of time." *Id.* at 26–27. In the *Compliance* pamphlet itself, however, the Staff notes that its discussion of the Credit Act is not binding upon the Commission (except to the extent of formal Interpretations), *id.* at ii, and should not be construed to represent substantive rules that have the force and effect of law. *Id. See also*

■ No judicial inquiry into an agency's procedures for gathering and evaluating information is required, however, if the report in question is in fact true. *Peller v. Retail Credit Co.,* Civil No. 17900 (N.D.Ga. Dec. 6, 1973). In other words, accuracy of the final product forecloses inquiry into the reasonableness of the procedures used to produce the report. *Roseman v. Retail Credit Co.,* 428 F.Supp. 643 (E.D.Pa.1977); *Middlebrooks v. Retail Credit Co.,* 416 F.Supp. 1013 (N.D.Ga.1976); *Austin v. Bank-America Service Corp.,* 419 F.Supp. 730 (N.D.Ga.1974). In this case, the information contained in the report issued on the McPhees is indisputably true.

But the complaint does not rely on that information alone, in alleging a violation of § 1681e. The McPhees dispute the accuracy of the report on the basis of what it did *not* contain. Although the report contained no false information, they maintain that it was inaccurate, incomplete and/or misleading in failing to report the withdrawal of their petition for bankruptcy. Other cases have refused to find that omissions in reports otherwise true render those reports inaccurate within the meaning of § 1681e and thus trigger an inquiry into the procedures by which the reports are compiled. *Middlebrooks v. Retail Credit Co., supra,* involved a report that included information about the plaintiff's arrest in connection with a gambling raid, but no updated information to the effect that an ultimate disposition of the criminal charge had not been made. In *Austin v. BankAmerica Services Corp., supra,* the report in question noted that Mr. Austin had been named as a defendant in a previous lawsuit, but did not explain that he had been sued in his official capacity as a deputy sheriff rather than in his individual

capacity. The courts in both cases found the reports accurate despite the omissions.

■ Plaintiffs here argue that reports involving bankruptcy matters differ from those with information about civil suits like that in *Austin* and criminal matters like that in *Middlebrooks.* They assert that bankruptcy proceedings and debtor-creditor relationships are peculiarly within the province of credit reporting agencies, and should therefore be subjected to continuous updating by the agencies after information is first received. But the Credit Act makes no distinction that would require updating of information about bankruptcies and not about other subjects.[5] The statute does prohibit the publication of reports containing stale information about bankruptcies, those whose adjudication antedates a report by more than fourteen years. 15 U.S.C. § 1681c(a)(1). But compliance with this provision does not require investigation by the agency after initial receipt and verification of information concerning bankruptcy, since the age of the information is apparent on its face. Congress specifically mandated that agencies devise procedures for this sort of "updating" in § 1681e(a),[6] and did not impose any further updating requirement in § 1681e.

■ By contrast, the Credit Act does distinguish between "completeness" and "accuracy" of information in § 1681i, which empowers a consumer to challenge an agency directly about the information in his file. See note 1, *supra.* After an alleged violation of that section, a consumer could presumably bring suit on the basis of information that is not "complete." He might argue that "completeness" implicates updated information, a question that this Court need

Note, "Judicial Construction of the Fair Credit Reporting Act: Scope and Civil Liability," 76 Col.L.Rev. 458, 469 (1976). This Court finds no statutory authority for such a sweeping statement. The only "updating" requirements imposed by the Credit Act, either expressly or by implication, are the limited ones discussed *infra.*

5. Although the legislative history cited above distinguishes information concerning bankrupt-

cies from that on other subjects, the duty imposed on agencies as a result can and indeed must be fulfilled as information is received and verified.

6. All of the provisions of § 1681c, which § 1681e(a) enforces, concern staleness of information. Compliance calls for a review of dates already recorded, rather than a *new* investigation or verification of matter outside the file.

not decide now. Section 1681e, the basis for this action, mentions "accuracy" only.[7]

■■■ The report on the McPhees does not include information on the course of their bankruptcy petition after initial filing. *Cf. Fite v. Retail Credit Co.*, 386 F.Supp. 1045 (D.Mont.1975), *aff'd mem.*, 537 F.2d 384 (9th Cir. 1976) (credit report included information on arrest, sentence, and setting aside of conviction). By including such information, the report might have been "more accurate than it was." See *Green v. Stores Mutual Protective Association, supra,* slip op. at 12.[8] It might have noted that the petition had been withdrawn, or in different circumstances that a full adjudication of bankruptcy had occurred. See *Lowry v. Credit Bureau, Inc.*, 444 F.Supp. 541 (N.D.Ga.1978). But unless that information was available at the time the agency first learned that a petition for bankruptcy had been filed, so that the agency could find the information in the reasonable process of verifying adverse material as received, the agency could not be charged under the Credit Act with a violation of § 1681e for the omission of later developments.[9] To require an agency independently to update information after receipt and verification would burden commercial dealings beyond any currently required legislative mandate. The McPhees' complaint does not allege or imply that Fowler wilfully or negligently omitted information available in a verification procedure carried out when information was received that a petition in bankruptcy had been filed. The report is thus true and accurate within the meaning of the statute, and inquiry into the reasonableness of procedures used to compile reports is foreclosed.

Accordingly, the motion of defendant Fowler to dismiss the complaint as to him is hereby granted. The motion of the plaintiffs becomes moot and is dismissed. The dispute concerning Fowler's report is entirely separate from the other claims in the action, and since there is no just reason for delay, the Clerk is expressly directed, pursuant to Fed.R.Civ.P. 54(b), to enter judgment for Fowler.

---

**7.** The Credit Act does not require that a consumer pursue the remedies provided in § 1681i before bringing suit under § 1681o for violation of § 1681e. If a consumer can prove a violation of § 1681e, he can sue directly on that basis without first exhausting alternative remedies. If the gravamen of a complaint is that a report is "incomplete" rather than "inaccurate," however, § 1681i offers the only basis for suit.

**8.** *Green* concerned a report containing information about an incident that had occurred more than five years previously. The plaintiff had been arrested by a store guard in a department store, on suspicion of shoplifting. She was interrogated by the store security personnel, signed a standard form confession, and was released. She was not subsequently arrested by public authorities, and was never charged with any crime on the basis of that incident. She brought suit after being denied a job allegedly on the basis of the report containing information on the earlier incident. She did not assert that any information in her file was erroneous. The court held that she had stated a claim under § 1681e(b) in alleging damage caused by "a report which should have been more accurate than it was."

The opinion does not reveal whether the published report contained all the material in the plaintiff's file. If the court construed the complaint to allege that the agency failed to include information available to it and in its files at the time it first published the report, then its holding is not inconsistent with the decision made today. But if *Green* held that the plaintiff had stated a claim in alleging that the agency should have undertaken subsequent research on its own and included new findings in its reports, this Court declines to follow such a reading of the Credit Act.

**9.** This case does not require a decision as to whether an agency violates § 1681e(b) of the Credit Act if it publishes a report containing information that is true but not containing other true information in the agency's files at the time of publication.