**In re Larry Bruce WHITENER, Debtor.**

**Bankruptcy No. 80-00389.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Feb. 13, 1986.

Larry Bruce Whitener, pro se.

Mary Rex, Consumer Affairs Adm'r, TRW Information Services Div., Orange, Cal.

Robert O. Tyler, Trustee in Bankruptcy, Alexandria, Va.

Clarke W. Brinckerhoff, FCRA Program Advisor, Division of Credit Practices, Bureau of Consumer Protection, F.T.C., Washington, D.C.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

A major purpose of the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101–151326 ("the Code") is to give the honest debtor a fresh start. The question presented here is whether the honest debtor can also obtain a clean credit slate if he voluntarily satisfies obligations previously discharged in bankruptcy.

Larry Bruce Whitener ("Whitener") filed a petition for relief under chapter 7 of the Code on April 22, 1980. Whitener received a discharge in his no-asset case on July 31, 1980, and his case was closed on May 29, 1981. Even though he was no longer legally obligated to his pre-petition general creditors, Whitener began to pay them voluntarily.[1] Over time, he managed to satisfy them in full.

1. Before filing under chapter 7 of the Code, Whitener had been informed by counsel of the option of proceeding under chapter 13. Chapter 13 provides individual debtors the opportu-

Having satisfied his creditors, Whitener then sought to amend his bankruptcy court file so that credit bureaus would no longer report that he had discharged his debts in bankruptcy. On April 24, 1985, Whitener, proceeding *pro se*, filed a "Motion to Rehear and Dismiss Chapter 7 [D]ischarge [No.] 80–00389." The motion was heard on May 7, 1985, and an order was entered on May 17, 1985:

> That this case be reopened and [t]hat said Chapter 7 discharge be revoked and this matter be dismissed for causes shown that all concerned and involved parties and creditors have been satisfied with regard to their accounts and have agreed to the aforesaid dismissal of such case.
> The involved case may be reported as revoked.

However, instead of using the term "revoked" as requested credit bureaus reported that Whitener's bankruptcy petition had been dismissed. Believing that the item "bankruptcy dismissed" provided a misleading impression of his true financial history, Whitener attempted to persuade the bureaus to delete the item from his report. Apparently, he was successful with all except TRW, Inc. ("TRW").

Whitener's next step was to file a "Motion to Rehear and Vacate [R]evoked Chapter 7" on August 20, 1985. This motion requests the Court to rehear Whitener's case and expunge it from public record. Whitener proffered an order that would incorporate the terms of the May 17 order but, in addition, provide "that all reference in public records be expunged and that further public access to this case be reported as 'no public records found.'" In effect, Whitener requests the Court to wipe his bankruptcy slate clean so that there will be nothing on file for an agency like TRW to find and report.

Whitener's plight is illustrated by a letter to him from TRW in response to his request that information about his bankruptcy be deleted from his records in view of the fact that he had voluntarily paid his pre-petition creditors in full. According to the letter, offered by Whitener as an exhibit in support of his August 20 motion:

> TRW's policy is … to report tax liens, judgments and bankruptcies, even after they are paid and/or dismissed, discharged, etc. … As long as [these items appear] in the public record, TRW is allowed to report [them] for a period of ten (10) years.[2] If [an] item is expunged from the court record and TRW is unable to verify it, we will delete it from your report.

Letter from Mary Rex, TRW, Inc. Consumer Affairs Administrator, to Larry B. Whitener (July 11, 1985).

Expungement is always an extraordinary remedy, and it has been suggested that Whitener send a brief statement of the facts of his bankruptcy case to TRW and request that the statement be included in future credit reports. Section 1681i of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t, outlines a procedure to follow in cases in which the completeness or accuracy of information contained in a consumer's file is disputed. Once informed of the dispute, the agency shall "reinvestigate and record the current status of that information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant." 15 U.S.C. § 1681i(a). If the agency reinvestigates the information but the dispute remains unresolved, "the consumer may file a brief statement setting forth the nature of the dispute." 15 U.S.C. § 1681i(b). Once a statement is filed, the agency must provide the statement or a summary of it "in any subsequent consumer report containing the information in question," provided, however, that the statement need not be reported if "there is [sic] reasonable grounds to

---

nity to formulate a plan to pay their creditors in installments over a period of up to five years. *See* 11 U.S.C. § 1322(c).

**2.** The Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t, prohibits credit bureaus from including items of information about "Cases un-

der Title 11 or under the Bankruptcy Act that, from the date of entry of the order for relief or the date of adjudication, as the case may be, antedate the report by more than 10 years." 15 U.S.C. § 1681c(a)(1).

believe that it is frivolous or irrelevant." 15 U.S.C. § 1681i(c).

It is not clear from the record whether Whitener has attempted to file a statement under section 1681i of the Fair Credit Protection Act. *McPhee v. Chilton Corp.*, 468 F.Supp. 494 (D.Conn.1978), suggests that this avenue might be open to Whitener. The McPhees filed a petition in bankruptcy on January 29, 1975. 468 F.Supp. at 495. They withdrew their petition shortly thereafter, however, and their case was dismissed on March 27, 1975. *Id.* The McPhees then paid their creditors in full. *Id.* In July 1977, the McPhees' application for a mortgage was rejected, allegedly because of a credit report dated June 20, 1977 including the following information about the McPhees: " 'Bankruptcy: Filed Jan. 29, 1975[.] Liabilities · $14,106. Assets $1355.' " *Id.* The McPhees claimed that this information was not accurate within the meaning of section 1681e(b) because it failed to report the withdrawal of their bankruptcy petition. *Id.* at 496.

The court ruled in favor of the credit bureau because the information in the McPhees' report was accurate at the time the bureau first learned about the bankruptcy. 468 F.Supp. at 498. The defendant agency had not violated section 1681e in omitting subsequent developments in the case: "To require an agency independently to update information after receipt and verification would burden commercial dealings beyond any currently required legislative mandate." *Id.* In the course of its opinion, the court suggested that the plaintiffs should have proceeded under section 1681i to request a "reinvestigation and deletion" of the "alleged inaccuracies." *Id.* at 496 n. 2. The court observed that if a plaintiff's basis for suit is that the information in his file is incomplete rather than inaccurate—the case in *McPhee*, as the plaintiffs did not dispute that the fact of their filing bankruptcy was accurate as reported—then section 1681i is the sole basis for suit. *Id.* at 498 n. 7. The McPhees could have filed a statement pursuant to section 1681i, which the defendant could have been required to include in subsequent reports. *See id.* at 496 n. 2.

Although *McPhee* suggests that Whitener might have a right to supplement the information on his bankruptcy in TRW's report, this issue is not one for the Bankruptcy Court to determine. Congress has charged the Federal Trade Commission with the responsibility for administering the Fair Credit Reporting Act. 15 U.S.C. § 1681s(a). In any event, Whitener seeks a more complete remedy before this Court than the right to include an explanatory statement on his credit report. Unlike the McPhees, who complained because the credit bureau had not reported the fact that their bankruptcy petition had been withdrawn and dismissed, Whitener complains because TRW *has* reported the fact that his bankruptcy petition was dismissed. Whitener wants his bankruptcy records expunged so that TRW and other bureaus cannot verify or report any information whatsoever about his bankruptcy.

■ Whitener's request for expungement of his records invokes section 107 of the Code, which allows impoundment of bankruptcy records to "protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b)(2). It is undisputed that the information in the papers on file in Whitener's case is true. The dissemination of truthful matter cannot be enjoined merely because the matter is prejudicial; section 107(b)(2) requires that the matter be scandalous or defamatory. *Cf. In re Northern Energy Products*, 7 B.R. 473, 474 (D.Minn.1980) (notwithstanding possible prejudice, chapter 11 debtor could not enjoin the Better Business Bureau from disseminating a report mentioning the debtor's bankruptcy filing because the report was a truthful matter of public record and not scandalous). In addition to the Code, Whitener cites the Fair Credit Reporting Act in his prayer for relief. However, as has been explained previously, enforcement of the Fair Credit Reporting Act lies in the first instance with the Federal Trade Commission.

■ The instant case is one of first impression. Apparently no one has ever

sought to expunge the records of his personal bankruptcy for the reasons Whitener has advanced before this Court. The Court believes that expungement is neither necessary nor proper in this case. There has been no showing that expungement is required to protect Whitener's rights.[3] However, Whitener does deserve some form of relief in light of his efforts. Accordingly, an order will enter declaring Whitener's bankruptcy petition null and void. This order by its terms will have the same effect as though the debtor had never filed his petition. Thus, although Whitener's bankruptcy file will remain open to the public, the above-described order will serve to grant him the relief he seeks.

**3.** Federal courts possess the inherent power to expunge court records when that "'remedy [is] necessary and appropriate in order to preserve basic legal rights.'" *Livingston v. United States Department of Justice,* 759 F.2d 74, 78 (D.C.Cir. 1985) (quoting *Sullivan v. Murphy,* 478 F.2d 938, 968 (D.C.Cir.1973)). Records of arrests as well as convictions have been expunged. *See, e.g., Sullivan v. Murphy, supra,* 478 F.2d at 968–71 (expungement of records a viable remedy for anti-war protestors arrested in violation of their constitutional rights); *Doe v. Webster,* 606 F.2d 1226, 1238–44 (D.C.Cir.1979) (rehabilitated offender was entitled to have the records of his marijuana conviction expunged to allow him to escape stigma and to implement the "fresh start" policy of the Federal Youth Corrections Act). It is well established that federal courts possess the power to expunge government records gathered or maintained in violation of the First Amendment. *See, e.g., Reuber v. United States,* 750 F.2d 1039, 1068–69 (D.C.Cir.1985) (Bork, J., concurring) and cases cited therein. In certain cases, government employment records have been expunged in order to protect individual rights. *See, e.g., Chastain v. Kelley,* 510 F.2d 1232 (D.C.Cir.1975). The individual rights to be protected need not be constitutional or statutory. *Id.* at 1235.