**In the Matter of Robert F. JOYCE, Debtor.**

**No. 03–13135 (PJW).**

United States Bankruptcy Court, D. Delaware.

Jan. 6, 2009.

Robert F. Joyce, Wilmington, DE, Pro Se Debtor.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is in regards to debtor Robert F. Joyce's *pro se* Motion to Vacate ("Motion") a bankruptcy case which was filed voluntarily in 2003 and as to which Mr. Joyce received a discharge on January 21, 2004. For the reasons stated below, I will not vacate, expunge, or otherwise amend the bankruptcy filing.

## BACKGROUND

On October 13, 2003, Joyce filed a voluntary petition for chapter 7 bankruptcy relief. Joyce retained an attorney to assist him with his filing. (Doc. # 1, p. 1.) Joyce testified that he filed for bankruptcy because he "was not able to resolve [his] debt issues" and because he lost $1,285 paid by check to an out-of-the-country outfit operating a loan scam. As to the loan scam, Joyce testified that he applied for the bogus loan because of his desperate financial situation, in order to avoid filing for bankruptcy, but the scam only plunged him deeper into debt. (Doc. # 17, 3:4–21,

22:17–22.) According to Joyce, the loan scam ultimately resulted in his identity being stolen. However, none of his debts as of the petition date were incurred fraudulently because of the theft: Joyce acknowledged repeatedly that all of the claims of creditors against him listed on Schedule F (Creditors Holding Unsecured Nonpriority Claims) of his bankruptcy petition were personally incurred. (*Id.* at 8:12–16:15, 25:5–12.)

█ On September 2, 2008, Joyce filed the Motion, requesting that the Court vacate his bankruptcy filing such that his bankruptcy is no longer publicly reported. (Doc. # 17, 5:1–3.) Pursuant to 11 U.S.C. § 107(a), filing for bankruptcy is a public act and, accordingly, all papers filed in bankruptcy cases and the dockets of bankruptcy courts are public documents subject to examination by members of the public. *See* 2 *Collier on Bankruptcy* ¶ 107.02 (15th ed.2008). Pursuant to 15 U.S.C. § 1681c(a)(1), which is part of the Fair Credit Reporting Act ("FCRA"), bankruptcy filings can be reported for no more than 10 years on an individual's credit file. Consequently, Joyce's 2003 bankruptcy filing is accessible to individuals and entities, including those from whom he may seek credit, both through the bankruptcy court's public records system and through Joyce's credit report. It is the public reporting of his bankruptcy filing and the subsequent use of that public reporting to augment his credit report that Joyce complains is damaging his ability to obtain credit and "move along with his life." (Doc. # 17, 5:10–15.)

In the Motion, Joyce contends that the bankruptcy "was filed as a result of identity theft." (Doc. # 12.) Though not requested in the Motion, during testimony Joyce also requested that the Court "shroud" his information. (Doc. # 17, 10:21.)

## DISCUSSION

█ Through his Motion and testimony, Joyce effectively is requesting that the Court issue an order such that his bankruptcy filing will no longer be visible to the public or such that his bankruptcy filing will be amended so that anyone who views it will conclude that the filing should not be taken into consideration when assessing his credit risk. As outlined in *In re Buppelmann*, 269 B.R. 341, 343 (Bankr. M.D.Pa.2001), a court can accomplish this result in three ways: (1) it can order that the bankruptcy filing be expunged and thereby require that all documents related to a bankruptcy filing be destroyed and removed from the public record; (2) it can make a notation in the bankruptcy file itself to the effect that the bankruptcy petition was filed fraudulently and thereby "allow any entity that was interested in the course of the bankruptcy to conclude that the matter was, in fact, fraudulent"; or (3) it can order the clerk of the court to delete all references to the debtor's name on the case dockets and thereby make the debtor's filing not appear when the bankruptcy court's docket is searched by the debtor's name. Additionally, a court can declare a bankruptcy filing "null and void," which is best thought of as making a notation and not akin to expungement as the term and some decisions may suggest. *See In re Whitener*, 57 B.R. 707 (Bankr.E.D.Va. 1986) (entering an order declaring the debtor's bankruptcy "null and void" and noting that "[t]his order by its terms will have the same effect as though the debtor had never filed his petition. Thus, although [the debtor's] bankruptcy file will remain open to the public, the ['null and void'] order will serve to grant" the expungement relief sought).

█ The noteworthy difference between expungement and declaring a bank-

ruptcy filing "null and void" is that expungement definitively "wipes the slate clean of any reference to the filing" such that an individual can answer "no" to the question "have you ever filed for bankruptcy." *See* Peter C. Alexander, *Identity Theft And Bankruptcy Expungement*, 77 Am. Bankr.L.J. 409, 412 (2003). In addition, declaring a bankruptcy filing "null and void" does not necessarily prevent interested entities from obtaining bankruptcy-related information about an individual: a "null and void" declaration merely requires a bankruptcy court to make a notation in the court's record that alerts interested parties that a particular bankruptcy filing should be disregarded for a particular reason or reasons; there is no requirement that any entity actually disregard the information or that credit reporting agencies remove the bankruptcy filing information from an individual's credit report.[1] *See id.* at 423–24. Thus, as to the instant case, a "null and void" declaration is considered the same as making a notation in the bankruptcy file.

 Expungement is an extraordinary remedy that is granted with the "greatest of prudence by bankruptcy judges." *In re Buppelmann*, 269 B.R. at 341. Expungement necessarily restricts the public's access to records that other-

wise are meant to be public; accordingly, an expungement order is only appropriate when it is clear that the record should not have entered the public domain in the first instance. Expungement is traditionally associated with criminal courts. *See* Alexander at 409 ("Expungement is typically thought of as a means of providing a fresh start to criminal defendants who have completed their rehabilitation."). Unlike under criminal expungement statutes, there is no clear statutory authority that allows a bankruptcy court to order an expungement. *Compare In re Whitener*, 57 B.R. at 709 (stating that expungement involves 11 U.S.C. § 107(b)(2), which allows a court to "protect a person with respect to scandalous or defamatory" materials) *with In re Buppelmann*, 269 B.R. at 341 (identifying the equitable powers implied under 11 U.S.C. § 105 as the source of a bankruptcy judge's ability to order an expungement). Reflecting the lack of statutory direction regarding bankruptcy expungement, to date, only one bankruptcy court—the Bankruptcy Court for the District of South Carolina—has ordered expungement. *In re Storay*, 364 B.R. 194 (Bankr.S.C.2006) (citing 11 U.S.C. § 105 and granting debtors' request for expungement because the debtors' attorney filed the debtors' bankruptcy petition without authorization).[2]

---

1. A bankruptcy court cannot order credit reporting agencies to remove an individual's bankruptcy filing from that individual's credit report, nor does the bankruptcy court violate the FCRA by continuing to maintain debtor's bankruptcy records in any form it deems appropriate (as long as it is not in violation of 11 U.S.C. § 107(a)). Case law makes it clear that governing the activities of credit reporting agencies is the province of the Federal Trade Commission acting pursuant to the FCRA and that the bankruptcy court is not a credit reporting agency as defined by the FCRA. *See, e.g., In re Cortez*, 217 B.R. 538, 538 (Bankr.S.D.Tex.1997) ("The Bankruptcy Court is not a consumer reporting agency ... and does not prepare consumer reports. Papers filed in a bankruptcy case and the dock-

ets of a bankruptcy court are public records...."); *In re Whitener*, 57 B.R. at 709 ("Congress has charged the Federal Trade Commission with the responsibility for administering the Fair Credit Reporting Act."). Even if a judge orders expungement, it is unclear whether credit reporting agencies that have previously reported the bankruptcy will delete it from their reports, especially if they cannot determine why the record was expunged, thereby creating a similar problem as a "null and void" declaration: an individual's credit rating is not definitively restored.

2. Though this case ordered expungement based on 11 U.S.C. § 105, it has been suggested that 11 U.S.C. § 107(b)(2) "is the more likely source of a bankruptcy court's authority

Of the five published bankruptcy cases I have identified that address expungement of a bankruptcy case, *In re Buppelmann* is the most helpful.[3] That case involved two sets of debtors: the Buppelmanns and Mr. Fountain. The Buppelmanns retained an attorney to advise them about filing for bankruptcy and signed a document listing their creditors, but later instructed their attorney not to pursue their bankruptcy. Despite this request, the attorney filed a chapter 7 bankruptcy petition on their behalf, forging their signatures on all but their list of creditors in doing so. *In re Buppelmann*, 269 B.R. at 342. In contrast, as part of a workout arrangement, Fountain signed a bankruptcy petition that was to be filed as a last resort. Fountain's agent filed the bankruptcy petition without Fountain's express direction, but Fountain never affirmatively instructed his agent not to file the petition. *Id.*

In ordering that the Bupplemanns' filing be amended to note that the filing occurred as a result of fraud, but declining to order a similar remedy for Fountain's filing, the court noted that relief was not warranted "for what appears to be a poor choice of workout alternatives." *Id.* at 343. This statement comports with a similar statement in one of the other bankruptcy cases addressing expungement: "the Court does not believe it is appropriate to nullify or void a legal proceeding that was initiated voluntarily and that proceeded to a conclusion that is provided for and contemplated by the Bankruptcy Code." *In re Woods*, 2007 WL 1306427, **1–2, 2007 Bankr.LEXIS 1602, at *4–5 (Bankr. W.D.Mo. May 1, 2007). *See also In re Cortez*, 217 B.R. 538 (Bankr.S.D.Tex.1997) (declining to set aside bankruptcy case filings because they are public records). As to the Bupplemanns, the court noted that expungement may cause entities that previously were aware of the Bupplemanns' filing to be unable to determine why the record was expunged and that ordering the clerk of the court to delete all references to the Bupplemanns' name on

---

to issue an expungement order." Alexander, *supra*, at 416. Section 105 grants bankruptcy judges broad equitable powers that are to be used to further fundamental bankruptcy principles, which are directed toward rehabilitation of debtors and distribution of debtors' assets. Expungement is directed toward the public's notification of bankruptcy filings and access to bankruptcy-related documents, essentially rectifying via purging a fraudulent or otherwise incorrect filing. Purging the bankruptcy record does not further a fundamental bankruptcy principle in the same way as adjusting claims, enjoining state proceedings, issuing civil contempt orders, and other uses for which bankruptcy judges predominately have invoked § 105. *See id.* at 416–17. Conversely, § 107 specifically addresses the public's access to judicial records, thereby codifying the public's broad common law right to access judicial records. Section 107(b) circumscribes that broad right, similarly codifying the common law principle that the public's right of access to judicial records is not absolute. *See Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 597–98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); William T. Bodoh and Michelle M. Morgan, *Protective Orders in the Bankruptcy Court: The Congressional Mandate of Bankruptcy Code Section 107 And Its Constitutional Implications*, 24 Hastings Const. L.Q. 67 (1996); Diane Apa, *Common Law Right of Public Access*, 39 Vill. L.Rev. 981, 984–85 (1994). I view expungement as more akin to the protection from harm caused by an entity to a debtor or a certain party contemplated by § 107(b)(2) and not as akin to the broad equitable power to further the tenets of the Bankruptcy Code contemplated by § 105. Therefore, it seems that § 107(b)(2), and not § 105, is the more appropriate source of a bankruptcy court's authority to order expungement.

**3.** The five cases are: *In re Woods*, 2007 WL 1306427, 2007 Bankr.LEXIS 1602 (Bankr. W.D.Mo. May 1, 2007); *In re Storay*, 364 B.R. 194 (Bankr.S.C.2006); *In re Buppelmann*, 269 B.R. 341 (Bankr.M.D.Pa.2001); *In re Cortez*, 217 B.R. 538 (Bankr.S.D.Tex.1997); and *In re Whitener*, 57 B.R. 707 (Bankr.E.D.Va.1986).

the case dockets could prove an impossible task; accordingly, the court ordered that a notation be made in the Bupplemanns' case indicating that the filing was committed fraudulently. *In re Buppelmann*, 269 B.R. at 343. Granting the Bupplemanns some sort of remedy in the face of fraud comports with *In re Storay*, 364 B.R. at 196 (granting debtors' request for expungement because the debtor's attorney filed the debtors' bankruptcy petition without authorization) and *In re Whitener*, 57 B.R. at 709–10 (declaring a bankruptcy filing "null and void" because the debtor voluntarily satisfied all his obligations previously discharged in bankruptcy).

 Despite contending that the bankruptcy was filed as a result of identity theft, none of the claims of creditors against Joyce listed on his petition were incurred fraudulently. The fact that pre-petition Joyce lost $1,285 to an entity operating a loan scam did not result in a petition filing caused by identity theft. Joyce did testify that he gave that outfit his driver's license number and his social security number. (Doc. # 17, 7:16–21.) However, Joyce offered no evidence whatsoever that that outfit misused that personal information to cause Joyce to become liable to anyone. Indeed, to the contrary, Joyce testified that all liabilities shown on his Schedule F were personally incurred by him. If some of Joyce's debts has been incurred fraudulently due to identity theft or if Joyce had otherwise satisfied his obligations outside of the bankruptcy process, I would consider entering a notation in his petition to that effect. And if Joyce's attorney had filed the petition against Joyce's wishes or the petition otherwise had been fraudulently filed, I would consider expungement or a similar notation. However, based on Joyce's testimony, I cannot grant him any relief. Pre-petition, Joyce encountered financial difficulty,

partly the result of the loan scam, that prompted filing a bankruptcy petition. He had the assistance of counsel and was granted a discharge. The petition was initiated voluntarily and proceeded as contemplated by the Bankruptcy Code.

## CONCLUSION

For the reasons stated above, Joyce's motion to vacate his bankruptcy filing is denied.