Josephine P. COLLETTI,
Plaintiff-Appellant,

v.

CREDIT BUREAU SERVICES, INC.,
Defendant-Appellee.

No. 80–3260
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 14, 1981.

John P. Massicot, New Orleans, La., for plaintiff-appellant.

Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendant-appellee.

Before GEE, RUBIN and RANDALL, Circuit Judges.

PER CURIAM:

Complaining that the jury's verdict was contrary to the evidence and that the trial judge failed to give requested jury charges, plaintiff-appellant, Josephine P. Colletti, appeals from an adverse judgment below. Colletti sued defendant-appellee, Credit Bureau Services, Inc. ("CBS"), on September 19, 1977, for $150,000 in damages allegedly resulting from, among other things, CBS's asserted violations of the Fair Credit Reporting Act ("the Act"), 15 U.S.C. §§ 1681 *et seq.* After a one-day trial, the jury found for CBS, and the court, in accordance with the jury's verdict, dismissed Colletti's suit.

It is undisputed that CBS is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f); CBS uses the mail and telephone in interstate commerce for the purpose of preparing or furnishing consumer reports to third parties for monetary consideration; it regularly engages in the practice of assembling or evaluating consumer credit information. It is likewise undisputed that Colletti is a "consumer" within the meaning of the Act. 15 U.S.C. § 1681a(c) ("The term 'consumer' means an individual.").

Colletti's complaint against CBS was that CBS in April of 1976 and 1977 furnished Hibernia National Bank ("Hibernia") with reports that indicated Colletti was delinquent in her payments on a bill she incurred with a furniture store, Mintz and Mintz ("Mintz"). She maintained that the information transmitted by CBS was "false, inaccurate, and incomplete" and that CBS violated the Act by not taking any steps to insure the accuracy of its reports as to Mintz after being advised by Colletti of the disputed nature of the information in April of 1977. CBS's defense was that the reports were accurate and that Colletti specifically told its employee in April 1977 "not to take any additional action in order to determine the accuracy of this rating."

It was established at trial that in 1973, Colletti opened a ninety-day account with Mintz for some bedroom furniture costing between $3,600 and $3,900. She agreed to pay for the furniture in three equal installments within the ninety days, but because of her professed dissatisfaction with the condition of the furniture, she stopped paying after remitting about two-thirds of the purchase price. She then allegedly told Mintz that she would pay the balance when some furniture in good condition was swapped for the damaged furniture. In November 1974, Colletti ceased all payments.

In November 1975, CBS received a report from Mintz that Colletti owed $647 on her account and was delinquent in her payments. In April of 1976, Colletti visited the CBS office to investigate an adverse report that CBS had furnished to Hibernia. During her visit, Colletti filed a notice of dispute with CBS on her Mintz account. Thereafter, in May 1976, Mintz sent CBS a new rating for Colletti indicating that she was no longer in arrears and that she had a new account. Mintz's new rating was apparently the result of the efforts of Colletti's attorney.

Despite the new credit rating provided by Mintz, Colletti did not resume payments to it until November 1976. The month before Colletti began making payments, in October of 1976, Mintz sent CBS a report showing that Colletti was again delinquent in her payments. In April of 1977, Colletti, even though she had resumed payments in November of 1976, was more than four months delinquent in her account.

Mintz did not notify CBS that Colletti had begun making payments in November of 1976. Therefore, on April 12, 1977, when Colletti went to the CBS office a second time, she learned that Mintz's current report about her was unfavorable. She did not, however, file a notice of dispute about Mintz with CBS, and she specifically instructed CBS's employee not to call Mintz to check the accuracy of the report; she stated that she would take it up with her lawyer. Thereafter, on April 20, 1977, CBS furnished Hibernia with the information concerning Colletti's delinquency on her account with Mintz. Hibernia denied Colletti's application for a loan in April of 1977 partially because of its reliance on CBS's report.

In September of 1977, Colletti paid off her bill to Mintz and promptly filed suit against CBS in federal court and Mintz in state court. Colletti testified that she paid Mintz upon her attorney's advice and because Mintz claimed that it would bring her the good piece of furniture; she also paid because she wanted to prove to Mintz that she did not want to cheat that concern.

CBS, but not Colletti, moved for a directed verdict after the close of the plaintiff's case. The court granted the portion of the motion relating to "willfulness" on CBS's part but reluctantly denied the motion as to negligence, stating: "Frankly, if I wasn't so new and so concerned about an error or, if I was not inclined to try to err on the side of the party that would be affected by my granting the motion, I would grant it." After counsels' closing arguments, the court charged the jury:

[T]he Plaintiff contends that the Defendant was negligent in failing to maintain the accuracy or reliability of its reports, and thus, Plaintiff alleges that the Defendant violated the Fair Credit Reporting Act by failing to use reasonable procedures to assure accuracy of information regarding Plaintiff's credit rating . . . .

Defendant, on the other hand, contends that the reports were accurate, and further, that they correctly reflected the status of Plaintiff's credit relationship. It is up to you to decide, and that is the basic function of the Jury.

Before the jury deliberated, both parties objected to the above instruction. Colletti complained that the court did not charge on the standard CBS was to maintain to insure maximum accuracy of its reports or that the carelessness or haphazardness of CBS's procedures was at issue; CBS that the court did not charge that it was unnecessary to reach the issue of whether CBS's procedures were reasonable if the jurors found Colletti's credit rating to be accurate. The court explained to counsel that it intentionally refrained from giving detailed charges because it felt the matter should be submitted on a straight negligence basis.

Appellant contends that the jury's verdict in CBS's favor is contrary to the law and evidence. Section 1681e(b) of the Fair Credit Reporting Act provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Section 1681o of the Act imposes civil liabil-

ity on any consumer reporting agency "which is negligent in failing to comply" with the Act's requirements.

■ Before discussing the merits of appellant's contention about the verdict, we note that appellant did not move for either a directed verdict or a judgment n. o. v. in the district court. Therefore, this court cannot review the sufficiency of the evidence supporting the jury's verdict. *Dunn v. Sears, Roebuck & Co.*, 639 F.2d 1171, 1175 (5th Cir. 1981); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 297 (5th Cir. 1978). This court's inquiry is "limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a 'manifest miscarriage of justice.'" *Id.*

■ Appellant submits that the evidence shows that CBS furnished inaccurate, false information to its subscribers for over one year after learning about appellant's dispute in April 1976. She also argues that the evidence showed that CBS did not maintain reasonable procedures to insure the accuracy of its reports; CBS had a duty to reinvestigate her account after being notified of her dispute with Mintz in April 1976; and CBS's reports did not reflect the correct balance of her account with Mintz after November 1976.

Contrary to appellant's contentions, the evidence revealed that CBS's files were changed in May 1976 to show that appellant was not delinquent in her payments to Mintz. It was not until October of 1976 that the CBS files were changed to show that appellant was in arrears. A CBS employee testified at length about the procedures followed by CBS in obtaining information from creditors. The report furnished by CBS in April of 1977 to Hibernia was an accurate record of the information provided to CBS by Mintz in October of 1976. Colletti could have challenged the accuracy of the records on April 12, 1977, when she went to CBS's office, but she concedes that she chose not to file a notice of dispute and that she told a CBS employee not to check the accuracy of the report.

The evidence amply supports the jury's verdict. CBS's failure to check, in April 1977, to determine whether Mintz's report of October 1976 was stale does not constitute a Fair Credit Reporting Act violation. *See Todd v. Associated Credit Bureau Services, Inc.*, 451 F.Supp. 447, 449 (D.Pa.1977), aff'd, 578 F.2d 1376 (3d Cir. 1978) (Table of Cases), *cert. denied*, 439 U.S. 1068, 99 S.Ct. 834, 59 L.Ed.2d 33 (1979). Moreover, the April 1977 report was accurate in reporting that in October of 1976 Colletti's account was in arrears.

■ Colletti next argues that the court failed to charge the jury properly on the applicable law. This argument lacks merit. It is well settled in this circuit that

[T]he standard for reviewing a jury charge is not "academic perfection," *Bass v. International Brotherhood of Boilermakers*, 630 F.2d 1058, 1061 (5th Cir. 1980), but rather, whether the instructions to the jury, taken as a whole, gave a misleading impression or inadequate understanding of the law and the issues to be resolved.

*Miley v. Oppenheimer & Co.*, 637 F.2d 318, 332 (5th Cir. 1981). "A party is not entitled to have the jury instructed in the particular language of its choice." *Frosty Land Foods International, Inc. v. Refrigerated Transport Co.*, 613 F.2d 1344, 1348 (5th Cir. 1980). A trial judge has "considerable latitude in framing his instructions as long as he explains clearly the claim supported by the evidence." *Mary S. Krech Trust v. Lake Apartments*, 642 F.2d 98, 103 n.8 (5th Cir. 1981). The district court's jury charge explains clearly the key issue in the case: whether CBS violated the Fair Credit Reporting Act by not using "reasonable procedures to assure accuracy of information regarding Plaintiff's credit rating."

AFFIRMED.