Leonard W. HOUSTON, Sr., Plaintiff,

v.

**TRW INFORMATION SERVICES, INC., Defendant.**

No. 88 Civ. 0186(MEL).

United States District Court, S.D. New York.

Feb. 22, 1989.

---

Leonard W. Houston, Sr., New York City, pro se.

Townley & Updike, New York City, for defendant; Jerome P. Coleman, Andrew D. Goldsmith, of counsel.

LASKER, District Judge.

These cross-motions for summary judgment arise in an action by Leonard W. Houston, Sr. alleging that defendant Information Services Division of TRW Inc. ("TRW")[1] violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–1681t, by negligently and willfully failing to follow reasonable procedures to assure the accuracy of consumer credit reports that it issued on Houston. At issue is the legal consequence of TRW's admitted failure to omit from credit reports the listing of a judgment against Houston that had been vacated nearly two years prior to the issuance of the credit reports. Houston asserts first, in counts I and III of the amended complaint that TRW included "erroneous and defamatory information of libelous matter" in its credit reports on him, and that it failed to maintain strict and reasonable procedures to assure the accuracy of its reports in violation of 15 U.S.C. § 1681e(b); second, in count II, that TRW subsequently failed to reinvestigate the accuracy of disputed information in violation of 15 U.S.C. § 1681i; and third, in count IV, that TRW defamed him by reporting the 1983 judgment.

TRW responds first, that it recorded the information regarding the judgment against Houston accurately in its files prior to vacatur, that it was not required to update this information and that in any event TRW's verification procedures were reasonable; second, it promptly reinvestigated the matter and corrected its credit report after plaintiff disputed its accuracy; and finally, Houston cannot maintain a defamation claim because he lacks evidence of malice necessary to overcome TRW's qualified common-interest privilege. For the reasons discussed below, TRW's motion for summary judgment is granted with respect to count IV, the defamation claim, but denied with regard to counts I–III, the § 1681i and § 1681e(b) claims; Houston's cross-motion for summary judgment is denied.

## I. Background

On September 25, 1987 Houston applied to Dick Gidron Cadillac, Inc. ("Gidron") for the credit sale of an automobile. On the same day, Gidron obtained a consumer credit report on Houston from TRW which contained, among other items, notice of an outstanding default judgment of more than $25,200 that had been filed on July 13, 1983 in New York Supreme Court. The report failed to mention that the judgment was vacated on October 24, 1985. Gidron denied Houston's application for a credit sale but referred it to another credit grantor, General Motors Acceptance Corp ("GMAC"). GMAC also denied the application.

1. Houston incorrectly captioned the defendant as "TRW Information Services, Inc."

Houston attributes both denials to the erroneous inclusion of the 1983 judgment in the report. Houston asserts that on September 2, 1987, prior to making his auto credit applications, he sent TRW a credit profile dispute form which contested several of the credit entries in TRW's file on him, including the 1983 judgment. TRW claims that it never received the page of Houston's dispute form containing his objection to inclusion of the 1983 judgment. Houston contends that he wrote follow-up letters to TRW after he received no reply to his initial letter.

TRW states that it first received notice of Houston's challenge to the accuracy of the listing of the 1983 judgment on November 6, 1987, at which time it wrote to Houston requesting additional information necessary to check the judgment, which it received on December 14. Although TRW began reinvestigating the accuracy of other disputed items in Houston's file on November 23, 1987, it only began reinvestigation of the 1983 judgment on January 4, 1988, when it sent a Consumer Dispute Verification Form to American Clerical Service Inc., a recognized investigative company. As a result of American Clerical's investigation, TRW contends that both the New York County Clerk's Docket of Individual Judgment Debtors, the public record TRW contends is generally accepted as most authoritative as to the validity of a civil money judgment, and the New York County Clerk's Minute Book entries contained no record of the 1985 vacatur judgment. However, Houston maintains that reasonable efforts would have revealed the existence of the 1985 vacatur because notice of the decision was published in the New York Law Journal and that the County Clerk's Minute Book contained entries which should have led TRW to discover the existence of the judgment.[2]

On January 27, 1988, shortly after Houston filed his complaint in this action, TRW's attorneys obtained a copy of the 1985 judgment, which had been placed in the court file. Two days later TRW deleted the 1983 judgment from its files. On March 29, TRW advised Houston of the deletion and offered to send updated credit reports to Gidron and GMAC. TRW asserts that as late as May, 1988, the Minute Book and the Docket of Judgment Debtors continued to omit any record of the 1985 judgment.

Houston alleges that TRW's failure to delete the 1983 judgment from its files after it was vacated and before release of the credit report to Gidron and GMAC was negligent and willful; that it failed to reinvestigate the 1983 judgment after he had disputed it, and that TRW supplied the inaccurate information with malice sufficient to prove defamation. Houston seeks actual and punitive damages for emotional distress and injury to his creditworthiness.

## II. The § 1681e(b) Claims

Section 607 of the FCRA, 15 U.S.C. § 1681e(b), states:

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

The threshold question in a § 1681e(b) action is whether the challenged credit information is inaccurate. If the information is accurate no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary. *Todd v. Associated Credit Bureau*, 451 F.Supp. 447, 449 (E.D.Pa.1977); *Middlebrooks v. Retail*

---

**2.** There are seven post–1983 entries in the Minute Book, including an entry made on the date of the vacatur, October 24, 1985, which states in part "motion granted," and an entry on December 17, 1985 which states "order notice of entry." Plaintiff's Notice of Motion for Summary Judgment, Exhibit G.

*Credit Co.,* 416 F.Supp. 1013, 1015 (N.D. Ga.1976).

Houston contends that TRW's report of the entry of the 1983 default judgment against him was inaccurate because the report failed to state that the judgment was later vacated. TRW answers that the information concerning the judgment against Houston was accurately recorded in its files prior to the date of the vacatur and that it was not legally inaccurate simply because that information had become stale by the time TRW issued Houston's credit reports in 1987.

*Colletti v. Credit Bureau Services, Inc.,* 644 F.2d 1148 (5th Cir.1981) lends support to TRW's position. In *Colletti* plaintiff challenged the information provided by defendant Credit Bureau Services ("CBS") as inaccurate and incomplete. The court held that CBS's failure to check whether admittedly accurate information it had received seven months earlier that plaintiff was in arrears in his payments had become stale did not constitute a FCRA violation. *Id.* at 1151. Similarly, in *McPhee v. Chilton,* 468 F.Supp. 494, 497 (D.Conn.1978), the court held that a credit agency's failure to state in its credit report that plaintiff's petition for bankruptcy had subsequently been withdrawn did not render the report inaccurate. The court ruled that the FCRA does not require that information which is verified as accurate *when received* be updated. *Id.*

> [U]nless the information was available at the time the agency first learned that a petition for bankruptcy had been filed, so that the agency could find information in the reasonable process of verifying adverse material as received, the agency could not be charged under the Credit Act with a violation of § 1681e for the omission of later developments.

*Id.* at 498.

The *Chilton* court rejected the argument that the defendant consumer reporting agency should be required under § 1681e(b) to continually update credit information. *Id.* at 498. The court found significant that, unlike other provisions in the FCRA, such as § 1681c which specifically prohibits reporting of obsolete information under certain circumstances,[3] § 1681e(b) does not include additional updating provisions.

Some courts have criticized the narrow approach taken in *Chilton* and *Colletti.* In *Koropoulos v. Credit Bureau, Inc.,* 734 F.2d 37, 40 (D.C.Cir.1984), the court contested the notion that section 1681e(b) violations occur only when a credit report contains information which is technically inaccurate. The court stated:

> Congress did not limit the Act's mandate to reasonable procedures to assure only technical accuracy; to the contrary, the Act requires reasonable procedures to assure "maximum accuracy." ... Certainly reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of the reports.

*Id.* However, the *Koropoulos* court also recognized "that in some cases, the additional information necessary for clarification would have required the [credit] agencies to conduct further investigation, a burden that the courts may have considered unreasonable." *Id.* at 41. *Koropoulos* did not involve reinvestigation or updating of information, a potentially burdensome task, but rather a credit agency's failure to include in a report conflicting information it already had in its files.

In the instant case by contrast, Houston alleges that TRW was required to update and check its information prior to the issuance of its credit report. There is no allegation that TRW had information about

---

**3.** § 1681c(a)(2) prohibits consumer reporting agencies from reporting "[s]uits and judgments which, from date of entry, antedate the report by more than seven years."

the 1985 judgment in its files; instead, Houston only alleges that it should have discovered its existence through outside investigation. Therefore, the analysis in *Chilton* is still relevant to this case.

TRW has no record of the date on which the 1983 judgment was entered in Houston's credit profile. Its customary practice is to enter civil money judgments into a consumer's file from two weeks to 60 days after the judgment is officially recorded on the public record. Therefore, according to the affidavit of the operations manager of TRW's Credit Data consumer relations department, "[i]t it is virtually impossible that the judgment was not entered into TRW's files prior to October 24, 1985, the date on which [the vacatur judgment] was filed in the New York County Clerk's Office." [4] If TRW received the information before the date of the vacatur, October 24, 1985, then under *Chilton*, the information would be considered accurate when received, TRW's failure to update that information would not render the initial information inaccurate or even incomplete as defined under § 1681e(b), and TRW would be under no duty to update the information.

■ However, the analysis in *Chilton* is not persuasive. In *Chilton* the court held that prior caselaw "did not require an agency to follow up on information contained in its files, once that information has been verified and evaluated as being accurate as of the date received." 468 F.Supp. at 496. However, section 1681e(b) states: "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure the maximum possible accuracy of the information." This language suggests that reasonable procedures to assure accuracy must be followed prior to the preparation of the credit report, even if such preparation occurs well after the date that information was initially received and entered into a credit agency's files, as in this case. Moreover, the *Chilton* court acknowledged that the Federal Trade Commission, the agency primarily

responsible for enforcement of the FCRA, has stated that

> the [FCRA] requires a determination of the accuracy of information and reliability of sources at the time information is gathered ... [But] the requirement in the law that steps be taken to promote accuracy also requires periodic reevaluation of data to determine whether it has become obsolete or misleading with the passage of time.

*Id.* at n. 4 (quoting **Compliance With The Fair Credit Reporting Act** (rev.2d ed. 1977)). Thus, even if TRW received notice of the 1983 judgment prior to the 1985 vacatur, thereby rendering the information technically accurate under *Chilton*, it was still required to follow reasonable procedures to ensure the accuracy of that information in 1987 when it prepared its credit report on Houston. Thus, the question remains whether TRW's procedures were reasonable.

■ Houston bears the ultimate burden of proving the lack of reasonableness in TRW's report procedures. *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir.1984). The standard for measuring TRW's actions is "what a reasonably prudent person would do under the circumstances." *Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 513 (5th Cir.1982). Evaluating the reasonableness of an agency's procedures involves balancing the potential harm from inaccuracy against the burden on the agency of safeguarding against such inaccuracy. *Stewart v. Credit Bureau, Inc.*, 734 F.2d at 51.

Houston cites *Bryant v. TRW, Inc.*, 487 F.Supp. 1234 (E.D.Mich.1980), to support his claim that TRW was required to do more than merely report accurately whatever information it received from creditors and other sources in order to comply with § 1681e(b). In *Bryant* defendant TRW had issued two credit reports on plaintiff Bryant within four months that were inexplicably inconsistent with each other. Although no such inconsistency is alleged here, Houston asserts *Bryant* is relevant

---

**4.** Supplemental Affidavit of Gloria Micelli at ¶ 6     (Jan. 15, 1989).

because he disputed the relevant information in his credit report prior to its release. In *Bryant* the court relied heavily on Bryant's meeting with TRW prior to the erroneous report's issuance in holding that TRW's procedures (TRW there made no effort to verify) could be considered by a jury to be a negligent or willful failure under § 1681e(b). *Id.* at 1239. In this case Houston did not meet personally with TRW prior to the issuance of the credit reports but he asserts that he did send TRW a credit report dispute form containing his objections to the listing of the 1983 judgment prior to TRW's issuance of reports to Gidron and GMAC.

Moreover, Houston claims that TRW overlooked information contained in the New York County Clerk's Minute Book that indicated that subsequent judicial action was taken on his case and that would have led, upon reasonable inquiry, to discovery of the vacatur. TRW maintains that its investigators would not have examined the County Clerk's Minute Book unless they had found some entry in the Docket of Individual Judgment Debtors that would have led them to further investigation; in any event, TRW argues, when it did subsequently consult the Minute Book it found no indication there of the vacatur.

■ In light of this dispute, there is a genuine issue of fact regarding the reasonableness of TRW's initial preparation of credit reports on Houston issued in 1987.

There is, however, no evidence to support Houston's allegation that TRW willfully failed to maintain reasonable procedures to ensure maximum possible accuracy. Once it confirmed that the public record was in error, TRW deleted the reference to the 1983 judgment against Houston.

Houston also claims that TRW failed to maintain "strict procedures" designed to ensure that the information provided was complete and current under 1681e(b). However, that section does not require that strict procedures be followed. The only section of the FCRA that requires that strict procedures be followed is 15 U.S.C.

§ 1681k(2), which states that when a consumer reporting agency supplies a report for employment purposes it must:

> maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

In this case section 1681k(2) does not apply because Houston was not applying for employment.

### III. The § 1681i Claims

■ Houston alleges that TRW failed to reinvestigate the information concerning the 1983 judgment after Houston disputed the entry, in violation of 15 U.S.C. § 1681i(a) which states:

> If the completeness or accuracy of any item of information contained in his file is disputed by a consumer, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall within a reasonable period of time reinvestigate and record the current status of that information ... If after such reinvestigation such information is found to be inaccurate or can no longer be verified the consumer reporting agency shall promptly delete such information.

Here, there is no genuine dispute that TRW reinvestigated whether the 1983 judgment against Houston was still pending and promptly deleted the information from Houston's file once it verified that a vacatur existed. At issue, however, is whether TRW "within a reasonable period of time" reinvestigated the judgment against Houston after learning from him about the order vacating the judgment.

First, there is a genuine dispute concerning the date that Houston notified TRW of the erroneous listing of the 1983 judgment and the existence of the vacatur. Houston asserts he notified TRW of the error in a completed consumer dispute form sent by certified mail on September 2, 1987.[5] TRW asserts that it did not receive all the information from Houston that it required to

---

5. Plaintiff's Exhibit G.

verify the 1983 judgment until Dec. 14, 1987.[6] This dispute goes to the reasonableness of the length of time that TRW spent reinvestigating the matter.[7]

A second issue bearing on the length of time that TRW took to reinvestigate is whether notice of the vacatur existed in the customary public records. Apparently due to a clerical error, the vacatur was not entered in the New York County Clerk's Docket of Individual Judgment Debtors, where it should have been recorded. However, there are several post–1983 entries in another record, the Minute Book, including one on the date of the vacatur which states "motion granted" which Houston asserts should reasonably have led TRW to discover the vacatur at an earlier date.

Given these genuine issues of material fact, the cross-motions for summary judgment with respect to the § 1681i(a) count are denied.

### IV. The Defamation Claim

■ Finally, Houston alleges that the credit report furnished by TRW "contained much erroneous defamatory information of libelous matter, ... that in fact materially affected said plaintiff in an adverse way."[8] TRW claims that it is protected from this defamation claim by 15 U.S.C. § 1681h(e), which provides:

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, except as to false information furnished with malice or willful intent to injure such consumer.

This section provides reporting agencies with qualified immunity against defamation actions by consumers based on information disclosed to them pursuant to § 1681g, which states that upon request a consumer reporting agency shall disclose to a consumer all of the information in its files on the consumer at the time of the request. *Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir.1980). The information in TRW's credit report was divulged to him pursuant to 1681g. Thus, TRW is protected by the qualified immunity of § 1681h(e). To overcome that immunity plaintiff must show that TRW furnished the information with "malice or willful intent," 15 U.S.C. § 1681h(e). In the instant case there is no evidence that TRW acted with either malice or willful intent. Once TRW learned of the 1985 judgment it promptly corrected its credit report on Houston by deleting the record of the 1983 judgment. Accordingly there is no basis for Houston's defamation claim.

\* \* \*

For the reasons stated above TRW's motion for summary judgment is granted as to count IV of the amended complaint (the § 1681h(e) claim) and otherwise denied.

---

**6.** Supplemental Affidavit of Gloria Micelli at ¶ 11 (Jan. 15, 1989).

**7.** In support of its contention that the time it took to reinvestigate the validity of the 1983 judgment against Houston was not unreasonable, TRW cites a July 31, 1986 FTC staff opinion letter that declines to issue an externally proposed FTC interpretation that every FCRA § 1681i(a) reinvestigation *must* be completed in less than 60 days. The letter simply and sensibly states:

The FTC staff is reluctant to recommend adoption of a Commission interpretation stating a specific number of days within which every consumer reporting agency should complete reinvestigation of all disputed items, where Congress refused to do so. A rigid rule concerning the time required to handle consumer disputes seems particularly ill-advised, because the extent and difficulty of the reinvestigation required may vary from one dispute to another.

Letter from David G. Grimes, Attorney with Division of Credit Practices of the Federal Trade Commission, to John Doe (July 31, 1986). This letter has little relevance to this case because Houston has never asserted that the reinvestigation should have occurred within 60 days but rather that TRW did not properly reinvestigate and took an unreasonably long period of time to discover and record the vacatur.

**8.** Plaintiff's Affidavit in Support of Motion for Summary Judgment at ¶ 6(e) (May 17, 1988).

Houston's motion for summary judgment is denied.

It is so ordered.